WM. A. EPHLAND, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 5, 1894.

1. Passenger Carrier: FALSE ALARM OF SERVANT: BELIEF OF PASSENGER. Where a passenger carrier's servant negligently gives a false alarm of danger and a passenger acting thereon receives an injury, to entitle the passenger to recover for such injury his belief in the imminence of danger must have been such as an ordinarily prudent man would have entertained under the same circumstances and the passenger's action must be that of a prudent man and unaccompanied with contributory negligence.

2. ———: ———: INSTRUCTION: APPEARANCES. An instruction telling the jury what facts and circumstances are sufficient to induce in the mind of a passenger a belief in the reality of a supposed danger, should not enumerate matters that the evidence does not show came to the knowledge of the passenger at the time; as the question must be determined by the circumstances as they appeared to the passenger.

3. ———: ———: NEGLIGENCE: INSTRUCTION. An instruction pointing out the facts that would make a carrier liable to a passenger for an injury received in consequence of a false alarm of danger given by its brakeman, should not omit the question of his negligence in giving the alarm; nor should such instruction omit the question whether the alarm was such as to cause an ordinarily prudent man, under the same circumstances to act as the passenger did; nor should it omit the question of passenger's contributory negligence; but if this question is properly submitted in the defendant's instruction, it will suffice.

4. Damages: LOSS OF TIME: PAYMENT OF WAGES. Where an injured person, who is upon a salary, receives his wages during his inability, he can not include an item of loss of time in his damages, but the matter of accident insurance is distinguished.

5. **Instructions**: TAKEN TOGETHER. Instructions should be taken together, and, when asked, the court should so declare; and some other suggestions as to instructions in this case are made.

6. **Instruction as to Interest of Party.** An instruction telling the jury to consider the plaintiff's interest in passing upon what weight they would give that part of his testimony in his favor; and that where he had testified against his interest, it should be taken as true, is condemned, and a better way suggested.

7. **Evidence**: CROSS-EXAMINATION: BONA FIDE USE. Much liberty is allowed in cross-examination, but it must be used *bona fide* to elicit the truth and not as in this instance to get discreditable matter before the jury for purposes not allowable.

8. **Passenger Carrier**: RISKS OF CABOOSE. A passenger who chooses to enter a caboose, though with the permission of the carrier, takes upon himself the necessary inconveniences and risks which accompany that sort of car in its relation to the management of the train.

9. ———: FALSE ALARM: DEMURRER TO EVIDENCE. While the facts in evidence in this case taken separately may tend to weaken a belief that there was anything to excite great fear of impending danger, yet taken together with the conduct and expressions of the brakeman, which were not in the usual performance of his duty, and, if there was nothing in the situation, or its appearance, to justify the conduct, were negligent, the whole facts were calculated to disconcert passengers and induce them to believe, as ordinarily prudent people, that danger was imminent; and it can not be said as matter of law that the plaintiff should have investigated for himself as to the outward appearances of danger.

10. ———: ———: NOT ADDRESSED TO PASSENGERS. Language imparting an alarm of danger, though not addressed to any one, yet if used without sufficient cause by the servant in charge of the car, may just as readily produce injury to a passenger as if addressed directly to him.

11. ———: ———: PROXIMATE CAUSE: ACTION OF OTHER PASSENGERS. In this case, if the negligent action of the brakeman in giving the alarm was such as might ordinarily be expected to produce panic among passengers and a belief of impending danger, the fact that the resulting action of the passenger added to plaintiff's terror and operated as additional inducement for his action, will not release the defendant.

*Appeal from the Bates Circuit Court.*—Hon. James H. Lay, Judge.

Reversed and remanded.

*Lon. O. Hocker* with *R. T. Railey* for appellant.

(1) At the conclusion of the whole case, the court should have sustained defendant's demurrer to the evidence for the following reasons: *First.* Plaintiff assumed the risk incident to his position, since it was more dangerous than that regularly provided for passengers, and since he took it, not from necessity, or at the request of defendant, but for his own pleasure. *Carroll v. Railroad*, 107 Mo. 653; *Tuley v. Railroad*, 41 Mo. App. 432; *Smotherman v. Railroad*, 29 Mo. App. 265; *Harris v. Railroad*, 89 Mo. 233; *Hickey v. Railroad*, 14 Allen, 433; *Railroad v. Hoosey*, 44 Am. Rep. 120; *Railroad v. Fay*, 63 Am. Dec. 329; *Brown v. Railroad*, 49 Mich. 153; *Doggett v. Railroad*, 34 Iowa, 285; *Railroad v. Thomas*, 1 Am. and Eng. R. R. Cases, 79; *Torrey v. Railroad*, 147 Mass. 412; *Bates v. Railroad*, 147 Mass. 255; *Files v. Railroad*, 149 Mass. 206. *Second.* Even conceding that defendant's brakeman made the alleged exclamation, the plaintiff, in acting thereon as he did, was guilty of contributory negligence. *Railroad v. Felton*, 33 Am. and Eng. R. R. Cases, 533, 538; *Railroad v. Wallen*, 26 Am. and Eng. R. R. Cases, 219, 222; *Filer v. Railroad*, 49 N. Y. 52; *Railroad v. Aspell*, 62 Am. Dec. 323; *Railroad v. Rosenberry*, 11 S. W. Rep. 212; *Kleiber v. Railroad*, 107 Mo. 249, 263, *et seq.*; *Harris v. Railroad*, 89 Mo. 233; *Smotherman v. Railroad*, 29 Mo. App. 265; *Peck v. Railroad*, 50 Conn. 379; *Spohn v. Railroad*, 22 S. W. Rep. 692; *Railroad v. Ware*, 1 S. W. Rep. (Ky.) 494. *Third.* The exclamation of defendant's brakeman, if made and if negligent, was not the proximate cause of plaintiff's injury. *Railroad v. Wallen, supra*; *Kleiber v. Railroad, supra*; *Hudson v. Railroad*, 101 Mo. 13; *Mathaison v. Mayer*, 90 Mo. 586; *Stepp v. Railroad*, 85 Mo. 233; *Henry v. Railroad*, 76 Mo. 288; *Harlan v. Railroad*, 65 Mo. 25; *Francis v.*

*Transfer Co.*, 5 Mo. App. 11; *Hicks v. Railroad*, 46 Mo. App. 304; Broom's Legal Maxims, sec. 215. (2) Plaintiff's instruction is clearly erroneous for the following reasons: *First.* It allowed the jury to consider matters unknown to the plaintiff at the time of the accident in determining whether he was justified in leaving the train as he did. *Little v. Macadaras*, 29 Mo. App. 335; *Gessley v. Railroad*, 26 Mo. App. 161; *Doty v. Stineburg*, 25 Mo. App. 333, 334; *Rose v. Rubeling*, 24 Mo. App. 369; *Muirhead v. Railroad*, 19 Mo. App. 634; *Waddingham v. Hulett*, 92 Mo. 535. *Second.* It authorized the jury to return a verdict for plaintiff, if the latter was induced by Lamb's exclamation to jump from the train, without submitting to them the proposition as to whether or not the exclamation, if any was made by Lamb, constituted negligence on the part of the defendant. *Kleiber v. Railroad, supra; Dowell v. Guthrie*, 99 Mo. 663; *Wilburn v. Railroad*, 36 Mo. App. 203, 210; *Blair v. Railroad*, 31 Mo. App. 231; *Wiederkind v. Water Co.*, 65 Cal. 431; *Andrews v. Parker*, 48 Tex. 94, 99; *Chouquette v. Barada*, 28 Mo. 499; *Glover's Adm'r v. Duhle*, 19 Mo. 360; *Barton v. Railroad*, 52 Mo. 256. *Third.* It authorized a verdict for the plaintiff, if the jury believed that the plaintiff was induced to jump from the train by Lamb's exclamation, without submitting to them the proposition as to whether or not a prudent man would have acted as plaintiff did under the circumstances surrounding him at the time. *Kleiber v. Railroad, supra; Railroad v. Ware, supra; Twomley v. Railroad*, 69 N. Y. 158; *Filer v. Railroad, supra; Haff v. Railroad*, 4 McCrary, 622; *Jones v. Boyce*, 1 Stark, 483; *Stokes v. Saltonstall*, 13 Peters, 181; *Ingalls v. Bills*, 9 Metc. 1; Beach on Cont. Neg., p. 57. *Fourth.* It authorized the jury to return a verdict for plaintiff, if plaintiff was induced by Lamb's declarations to jump

off, without requiring them to find that there was imminent danger, or even that plaintiff believed there was imminent danger at the time, or that, as a prudent man, under the circumstances, he had a right to assume there was imminent danger. *Kleiber v. Railroad, supra; Jones v. Boyce, supra; Spohn v. Railroad, supra; Railroad v. Ware, supra.* Fifth. Where plaintiff's instruction undertakes to cover the entire case, as does number 1, it must cover the whole case, and can not be considered in connection with defendant's to properly place the case before the jury. *Sullivan v. Railroad,* 88 Mo. 169; *Mansur v. Botts,* 80 Mo. 658; *Gibson v. Railroad,* 76 Mo. 286; *Raysdon v. Trumbo,* 52 Mo. 35; *Ellis v. McPike,* 50 Mo. 574; *Fitzgerald v. Hayward,* 50 Mo. 516; *Goetz v. Railroad,* 50 Mo. 474; *Thomas v. Babb,* 45 Mo. 386, *et seq.; Clark v. Hammerle,* 27 Mo. 70; *Ellis v. Wagner,* 24 Mo. App. 410; *Hoffman v. Parry,* 23 Mo. App. 30; *Clay v. Railroad,* 17 Mo. App. 632; *Van Blarcom v. Donovan,* 16 Mo. App. 535; *Evans v. Railroad,* 16 Mo. App. 525, 526; *State v. Nauert,* 2 Mo. App. 295; *Bluedorn v. Railroad,* 18 S. W. Rep. 1106. (3) Plaintiff's instruction number 2, is, if possible, more subject to objection than his first. (4) Plaintiff's instruction 3 told the jury that, in estimating the damages, they might take into consideration plaintiff's loss of time, and also his expenses incurred in and about attempting to cure himself, including medicine and medical attendance. (5) Instruction number 1, given by the court of its own motion, was improper. Neither plaintiff nor defendant had asked for an instruction to the effect that some one or more of the witnesses had testified falsely, and that the jury, if they believed such to be true, might disregard the whole or any part of the testimony of such witness. This was a declaration by the court to the jury that the former believed that some of the wit-

nesses had testified falsely. Instructions of this character should not be given, except in cases where the evidence clearly warrants them. *State v. Hickam*, 95 Mo. 332; *Owens v. Railroad*, 95 Mo. 181; *Stocker v. Green*, 94 Mo. 280; *White v. Maxey*, 64 Mo. 559; *Bank v. Murdock*, 62 Mo. 74; *Smith v. Railroad*, 19 Mo. App. 125, 126; *Evans v. Railroad*, 16 Mo. App. 525; *Batterson v. Vogel*, 10 Mo. App. 238; *Lacas v. Cole*, 57 Mo. 143. (6) Defendant's instruction number 3, refused by the court, is clearly the law and should have been given. *State v. Brooks*, 99 Mo. 137; *State v. Peak*, 85 Mo. 190; *State v. Talbott*, 73 Mo. 347; *State v. Curtis*, 70 Mo. 595. (7) The evidence concerning Little's conduct in Kansas was clearly inadmissible. *State v. Houx*, 19 S. W. Rep. (Mo.) 37; *People v. Cahoon*, 50 N. W. Rep. 385; Wharton's Crim. Ev., sec. 472; *Harper v. Railroad*, 47 Mo. 568; *People v. Lohman*, 2 Barb. 224; s. c., 1 N. Y. 379; *State v. Clawson*, 30 Mo. App. 144.

*Graves & Clark* and *John D. Parkinson* for respondent.

(1) There was no error in refusing the demurrer to the testimony. The evidence clearly proved negligence upon the part of defendant and no contributory negligence upon part of plaintiff. Jumping from a moving train under circumstances as detailed by the witnesses in this case, is not such contributory negligence as to take case from the jury, in fact, is not contributory negligence at all. *Kleiber v. Railroad*, 107 Mo. 240, *Siegrist v. Arnot*, 86 Mo. 200; *Nelson v. Railroad*, 68 Mo. 593; *Adams v. Railroad*, 74 Mo. 554; *Twombley v. Railroad*, 69 N. Y. 158; *Buel v. Railroad*, 31 N. Y. 314; *Wilson v. Railroad*, 26 Minn. 278; *Railroad v. Crunk*, 119 Ind. 542; *Southwest Improvement Co. v. Smith*, 85 Va. 306; *Railroad v.*

*Coulburn*, 69 Md. 360; *Pennsylvania Co. v. Stegemeier*, 118 Ind. 305; *Duane v. Railroad*, 72 Wis. 523; *Railroad v. Murray*, 55 Ark. 248; 2 Thompson on Trials, sec. 1684; 2 Thompson on Negligence, pages 1092, 1173 and 1174; Beach on Contributory Negligence [2 Ed.], p. 54, sec. 40, and cases cited; Hutchinson on Carriers, secs. 645, 649, 662; Wharton on Negligence, secs. 93, 304, 377, and authorities cited; The Law of Negligence (Deering), sec. 22; 3 Lawson's Rights, Remedies and Practice, secs. 1199, 1201, 1203; Whittaker's Smith on Negligence, p. 392, and note. (2) Plaintiff's presence in the caboose was perfectly proper and right. He was in the car provided by defendant for the transportation of passengers and assumed no risk by his presence there. *Tibby v. Railroad*, 82 Mo. 292; *Ashbrook v. Railroad*, 18 Mo. App. 304; *Gerstle v. Railroad*, 33 Mo. App. 361. (3) Defendant's negligence was not only the proximate cause of the injury, but the only cause of it. Beach on Contributory Negligence [2 Ed.], secs. 30, 31, 32; *Kleiber v. Railroad, supra*; *Haverly v. Railroad*, 135 Pa. St. 50; *West v. Ward*, 77 Iowa, 323; *Lapleine v. Railroad*, 40 La. Ann. 661; *Taylor v. Baldwin*, 78 Cal. 517; *Beke v. Railroad*, 102 Mo. 544; *Little v. Heckett*, 116 U. S. 366; *Postene v. Adams*, 49 Cal. 87; *Griggs v. Fleckenstein*, 14 Minn. 81; *Lane v. Atlantic Works*, 111 Mass. 140. (4) If defendant's negligent act was not the sole cause of the injury, but was coupled with the act of a third independent agent or person, and the two produced the injury, the defendant is still liable. *Weick v. Lander*, 75 Ill. 93; Beach on Contributory Negligence [2 Ed.], sec. 304. (5) Although McPeak's exclamation may have had something to do with the act of plaintiff (a fact which we do not concede), yet if McPeak's actions and exclamations were such intervening acts, as would ordinarily be expected to flow from the negligent and wrongful

act of defendant, or its employees, the defendant is still
liable.   2 Thompson on Negligence, p. 1089, sec. 6;
2 Thompson on Negligence, p. 1088, sec. 5; *Railroad
v. Murray*, p. 18, sec. 50; *Postene v. Adams, supra*;
*Griggs v. Fleckenstein, supra; Lane v. Atlantic Works,
supra; McIntyre v. Railroad*, 37 N. Y. 286; *Fuller v.
Railroad*, 59 N. Y. 351; *Burcher v. Railroad*, 98 N. Y.
128; 2 Redfield on Railroads, 278 and note; Thompson
on Carriers, 227, note 6; Beach on Contributory Neg-
ligence [2 Ed.], secs. 67, 68.   (6) The plaintiff had a
right to rely upon the orders and directions of defend-
ant's servants in charge of the train, who were in a
position to know, and were supposed to know, the
impending danger, if any, into which they were about
to run.   Defendant can not order and direct an act to
be done and then claim it is contributory negligence to
obey.   *Morrissey v. Ferry Co.*, 47 Mo. 54; *Tibby v.
Railroad*, 82 Mo. 292; *McGee v. Railroad*, 92 Mo. 208.
(7) A passenger may, without being held for contrib-
utory negligence, leap from a moving train, to save
himself from actual or reasonably apprehended peril.
*Jones v. Boyce*, 1 Stark, 493; *Stokes v. Salstonstall*, 13
Peters, 181; Beach on Contributory Negligence [2 Ed.],
p. 54; 2 Shearm. & Redf. on Neg., sec. 467; *Dimmitt
v. Railroad*, 40 Mo. App. 675; *Funk v. Potter*, 17 Ill.
406; *Eastman v. Sanborn*, 3 Allen, 576.   (8) *First.*
The court committed no error in giving plaintiff's
instruction number 1, and the same is fully supported
by, and based upon, the evidence.   Whittaker's Smith
on Neg., *supra*;   2 Thompson on Trials, sec. 1681.
*Second.* If the evidence shows the negligent act to be
willful, then, even if there appeared contributory neg-
ligence, it could be no bar to the action, and the court
would not have to instruct on contributory negligence.
Beach on Contributory Neg. [2 Ed.], sec. 28, 30, 64;
*Railroad v. Bodemer*, 139 Ill. 59; *Railroad v. Hirst*, 30

Fla. 1. *Third.* Ephland's testimony shows that he was familiar with the road—had been over it frequently in going to Butler, the county seat; that he knew where he was, some two or three miles from Butler, at the time of the accident; that he saw the acts of the brakeman; that he heard his language, and that the brakeman was excited. This certainly covered every ground embraced in instruction number 1, and said instruction was, therefore, based upon the evidence. (9) There was no error committed in giving plaintiff's instruction number 2. It properly declares the law in cases of this character. Whittaker's Smith on Neg., pp. 391, 392; 2 Thompson on Trials, secs. 1681, 1684; Beach on Contributory Neg. [2 Ed.], p. 54, sec. 40; 1 Addison on Torts [Wood's Ed.], secs. 591, 593; Hutchinson on Carriers, secs. 645, 649, 662; Wharton on Negligence, secs. 93, 304, 377; The Law of Negligence (Deering), sec. 22; 3 Lawson's Rights, Remedies and Practice, secs. 1199, 1201, 1203; *Railroad v. Murray,* 55 Ark. 248; *Duane v. Railroad,* 72 Wis. 523; *Penn Co. v. Stegemeier,* 118 Ind. 305; *Railroad v. Coulborn,* 69 Md. 360; *Railroad v. Crunk,* 119 Ind. 542; *Wilson v. Railroad,* 26 Minn. 278; *Buel v. Railroad, supra; Twombley v. Railroad, supra; Adams v. Railroad, supra; Wilson v. Railroad,* 68 Mo. 593; *Siegrist v. Arnot, supra; Kleiber v. Railroad, supra.* (10) *First.* There was no error in giving plaintiff's instruction number 3. It properly defined the elements of damages in this case. *Maxwell v. Railroad,* 85 Mo. 95; 2 Rorer on Railroads, pp. 858, 859, sec. 8; the same, p. 1098, sec. 9; Addison on Torts [Wood's Ed.], *supra. Second.* If plaintiff's employer saw fit to donate him $50 or $100, for which he rendered no service, or if his lodge paid him benefits during his confinement, defendant can take no advantage of these facts, and is liable the same as if this had not been done. Rorer on

Railroads, *supra;* Addison on Torts, *supra.* (11) The instructions as given in this case, taken together, embrace all the law applicable to the case, and clearly and succinctly state the same. This is all that is required. If defects or omissions occur in one instruction, and they are supplied in the others, whether for plaintiff or defendant, the error is remedied. The rule as stated in *Sullivan v. Railroad*, 88 Mo. 169, and other previous cases, relied upon by appellant, has been expressly disapproved in later discussions. *Owens v. Railroad*, 95 Mo. 181; *Mfg. Co. v. Tuggemos*, 98 Mo. 391, 397; *Bank v. Hutch*, 98 Mo. 376; *Harrington v. City of Sedalia*, 98 Mo. 583–588; *Schroeder v. Michel*, 98 Mo. 43, 48; *State v. Gregory*, 30 Mo. App. 582; *Blades v. Adams*, 35 Mo. App. 526, 531; *Wallich v. Morgan*, 39 Mo. App. 469, 473; *Mulchhauser v. Railroad*, 91 Mo. 332; *Reilley v. Railroad*, 94 Mo. 600; *Hoover v. Schwyhart*, 48 Mo. App. 50, 54; *Railroad v. Vivian*, 33 Mo. App. 558; *Ins. Co. v. Hauck*, 83 Mo. 21; *Russell v. Ins. Co.*, 55 Mo. 585; *Whalen v. Railroad*, 60 Mo. 323; *Kale v. Railroad*, 55 Mo. 476; *Williamson v. Van Meter*, 41 Am. Dec. 644; *Wood v. Chambers*, 70 Am. Dec. 382; *Easley v. Railroad*, 113 Mo. 236–244. (12) Defendant's instruction number 3 was properly refused, for two reasons: *First*, it singles out and comments on a portion of the testimony, which is improper. *State v. Stout*, 31 Mo. 406; *State v. Cushing*, 29 Mo. 215, 217; *State v. Meagher*, 49 Mo. 571, 589; *second*, it is covered by instruction number 1, given by the court of its own motion. (13) There was no error in refusing defendant's instruction number 4. (14) There was no error in the cross-examination of witness Little. (15) The instruction given by the court of its own motion was proper. *Loudener v. Lichtenheim*, 11 Mo. App. 385.

ELLISON, J.—The plaintiff was injured by jumping from one of defendant's caboose cars attached to a mixed train, carrying passengers and freight on defendant's railway. He instituted this action to recover damages alleged to have resulted to him, and recovered in the trial court.

Since the verdict was for plaintiff we will state as the facts what the evidence tended to prove. He was a passenger with three others and was riding in the caboose. While the train was running at a moderately rapid rate of speed the brakeman in the car, upon a whistle signal from the engineer (though plaintiff did not hear the whistle) called out in a loud and excited tone to jump off, for God's sake, and began, immediately, in an excited way, to set the brake. This excited the plaintiff and two of the other passengers. All three jumped up and one of the others called out to come on, when they all started for the car door. They all three jumped off while the train was running at from twelve to fifteen miles per hour. It was from this jump that the plaintiff received the injuries complained of.

In point of fact there was no danger or peril at hand and if the brakeman did give the alarm as claimed, it was a "false alarm." So that plaintiff's recovery must be defended upon the ground of defendant's servants having negligently given the false alarm and negligently called upon the passengers to jump off, thereby causing plaintiff to believe in the imminence of danger in remaining upon the train. This belief must have been such as an ordinarily prudent man would have entertained under the same circumstances, and plaintiff's action resulting therefrom must have been such as would probably have been taken by an ordinarily prudent man and must have been unaccom-

panied with any contributory negligence. There being no danger impending at the time of plaintiff's conduct resulting in his injury, the question of such appearance and belief of danger becomes the principal factor in plaintiff's cause of action. In this connection the court gave the following instruction for plaintiff, over defendant's objection: "The court instructs the jury that, if they shall believe from the testimony that a signal whistle to stop the train was sounded at a place remote from a station, switch or siding, and that William Lamb, the brakeman, responded to the signal in an excited or unusual manner and called out to jump, or jump for God's sake, or similar words, and the circumstances of the place, manner of the employees, together with the order and command, or exclamation, if you believe any such was made by said Lamb, induced plaintiff to jump from the train and he was injured thereby, then you will find for the plaintiff, and assess his damages at a sum not exceeding $5,000."

This instruction recites the facts and "circumstances of the place," which, if they induced the act, would justify plaintiff in jumping from the train. There was no evidence that plaintiff heard the sound of the whistle, or that he knew the train was remote from any siding, switch or station. The instruction therefore embraced erroneous matter materially affecting the merits of the case. For, as before stated, it was the appearance of things inducing a belief in an unreal danger that gives plaintiff any standing. It is quite apparent that under such state of the case it was greatly prejudicial to have submitted to the jury grave circumstances which would tend to induce the belief of peril, when no such circumstances appeared in evidence. If plaintiff was alarmed and made to believe there was danger impending, it must have been from matters appearing to, or operating upon, his mind. Therefore

matters of which he knew nothing could not have had any effect upon his conduct and should not have been included in the instruction.    The question of danger must be determined by the circumstances as they *appeared* to plaintiff.

The instruction was furthermore erroneous in practically excluding from the jury a consideration of whether the act of the brakeman in giving the alarm was negligence. It can not, from the evidence presented, be said to be negligence as a matter of law and therefore the hypothesis of negligence should have been included in the instruction.    *Welburn v. Railroad*, 36 Mo. App. 210.    The act of the defendant's servant in causing the alarm must have been a negligent act. *Kleiber v. Railroad*, 107 Mo. 249.

The instruction is likewise objectionable in that it omitted to submit the question whether the alarm given was such as was likely to cause an ordinarily prudent man, under the same circumstances, to act as plaintiff acted; and in this connection it is well to remark that it did not submit to the jury the question whether plaintiff believed there was impending danger.    It may be suggested that these objections were covered by defendant's instruction similarly to that pertaining to the next objection, but we think they are not sufficiently cured thereby. Defendant's instructions in a recitative way, refer to these matters, but not in that direct manner that they should have done.    If one party relies upon the instructions of his opponent to cure errors in his own, the cure should be complete and direct.

The further objection made to this instruction is that it omitted any question of contributory negligence of plaintiff.    There is such omission; but the question of plaintiff's contributory negligence is submitted in an instruction for defendant, and under the dissenting

opinion of BLACK, J., in *Sullivan v. Railroad*, 88 Mo. 169, as approved by the supreme court in *Owens v. Railroad*, 95 Mo. 181, we must hold this to be sufficient, notwithstanding that a verdict is directed for plaintiff in the first instruction on the matters therein contained, without reference to matters omitted, but which are contained in other instructions.

As the instructions were presented to the jury, the second one is subject to much of the criticism we have made of the first. But if the first had been as we have indicated it should have been, the second, following thereafter, would be properly understood by the jury and would in such case be free from any substantial error.

Plaintiff had included in his instruction as to the measure of his damages the item of loss of time. His testimony was that he was in the employment of a banking company and that during the period of his suffering from his injury he was paid his regular monthly wages or salary—no deduction or diminution thereof was made by his employers. He did not, therefore, lose his wages and was, of course, not damaged in this respect. The instruction contemplates a loss— a pecuniary loss. The case does not seek to punish defendant by the infliction of exemplary damages; it merely seeks compensation; if plaintiff did not lose there is nothing to compensate. This question has received consideration from the supreme court of New York in *Drinkwater v. Dinsmore*, 80 N. Y. 390, where it was decided that damages on this head, under such circumstances, could not be recovered. The question came before the St. Louis court of appeals in *Lee v. Western Union Tel. Co.*, 51 Mo. App. 375, and was decided adversely to the claim of wages. In the case last mentioned several of the authorities which are relied upon as maintaining a different view are

commented upon.   Some of them can not be reconciled with our conclusion here, though some of them are not necessarily inconsistent.   Thus, in *Indianapolis v. Gaston*, 58 Ind. 225, the plaintiff was a physician and he was permitted to recover for expenses in effecting his cure, though, in .fact, a custom among physicians, when one of them needed medical attention, was to render such attention free of charge.   This case might be defended, perhaps, on the mutuality of the application of the custom, so that the duty which devolved upon each had its consideration in the return of like services each was ready to make.   So in *Bradburn v. Railroad*, 10 L. R. Exch. 1, the fact that the plaintiff received the amount of his accident policy was held not a subject of consideration to reduce his damages. For in such case, an independent consideration, moving from him, has brought to him, the sum named in his accident policy.   He purchased the policy, and had a right to the proceeds of his purchase or contract.   But whatever may be said of those cases, we are confident that in a case where mere compensation for loss is sought, there can not be allowed, under the name of compensation, a sum which has not been lost.

Passing to the defendant's refused instructions, we find some just cause of complaint.   His instruction number 4 should be given. It is but a proper admonition to the jury not to look to one instruction, but to consider them all as embracing the whole law of the case. Under the phraseology of some of the instructions in calling for a verdict, while not presenting within its terms all the issues for determination, it is well to give an instruction, as was asked here, though we do not say that, standing alone, it would be reversible error.

Instruction number 7, as to mutual negligence, by omitting the words, "in any degree," and substituting

the word, "directly," would be proper to submit to the jury. If number 7 is given as indicated, number 8 will, perhaps, be unnecessary, in view of other instructions.

We are not prepared to approve of instruction number 3, offered by defendant and refused by the court. By it the jury would have been directed to consider the plaintiff's interest in the cause in passing upon what weight they would give that part of his testimony which was in his favor, and that in the instances, if any, where he had testified *against* his interest it should be taken by the jury *as true*. The amount of this would be, that all which the plaintiff, as a witness, might say in the course and run of his testimony, which was against his interest, was to be taken and accepted as a solemn admission of its being a *fact*, and should be so accepted. This is not a proper statement of the law. There are admissions or statements of fact which a party to a cause may make while upon the stand as a witness, which will bind him, but this is an entirely different proposition from that contained in the instruction. An honest party to a cause may make statements as a witness against his interest which he believes to be true and yet the entire balance of the testimony in the case show that he was mistaken.

The instruction given by the court of its own motion is not properly subject to criticism. That portion relating to false swearing is necessarily left much to the discretion of the court. *White v. Lowenberg*, 55 Mo. App. 69. The remainder which relates to the interest of witnesses, their appearance, manner, etc., was entirely proper and found full application to the case in hand.

In cross-examining one of defendant's witnesses with a view of locating him at a distant point in Kansas, so as to show that he could not have witnessed the accident, the witness was asked if he was not at the

place in Kansas attending a trial for divorce on the charge of adultery, in which he was a co-respondent. He answered that he was not. He was then further asked if he did not have such a case. There is much liberty allowed to the cross-examiner, but it must be utilized *bona fide* for the purpose of eliciting the truth as to the point being examined. It is apparent, from the record, that this question was not put to the witness in this way for the purpose of reminding him that he was in Kansas at the time of the accident, but rather to get a discreditable matter before the jury for purposes not allowable.

Defendant insists that plaintiff has no standing in court on the facts and that its demurrer to the testimony should have been sustained. The train, as has been stated, was a mixed train, composed of several freight cars, a regular passenger coach and a caboose. This caboose, as is well known, is a necessary attachment to a freight train, and is necessarily used and occupied in the running, manipulation and management of freight trains. The defendant permitted passengers to occupy it for smoking purposes, and it was for this purpose that plaintiff and the three other passengers were occupying it at the time of this accident. We are willing to concede to defendant's counsel that he makes a proper statement of the law when he says, in effect, that when plaintiff chose to enter the caboose, though with the permission of the company, he took upon himself the necessary inconveniences and risks which accompany that sort of a car in its relation to the management of a freight train. The fact that there was a passenger car on which passengers were carried and from which access to the caboose was permitted, will not alter the question from what it would have been had the train been a regular freight train on which passengers had taken passage. Notwithstanding this,

we have not been able to bring ourselves to the conclusion that it will interfere with the plaintiff's right of recovery if his contentions as to the facts are believed to be true. By separating the statement of the facts as made by plaintiff's testimony, we will find in its separate condition, much to shake our belief in there being any thing to excite great fear of impending danger. For instance, the fact that on a signal from the engineer, a brakeman quickly left his seat, going rapidily to the brake at the end of the car and hurriedly "setting" it, standing alone, amounts to little, if any thing, in plaintiff's favor. It is perhaps true that a brakeman rarely ever acts in any other way, indeed he might be fairly blaimed if he did not move alertly and rapidly. A jury would probably be slow to believe that such action alone on the part of the brakeman would excite any apprehension on the part of a passenger who had ever ridden on a freight train. But the whole statement in plaintiff's behalf should be considered together. It will be found to include conduct upon the part of the brakeman not usual in the performance of his usual duties. He was sitting up in what is called the cupola where he could see over the train and beyond. Allowing that plaintiff did not hear the signal from the engine, he yet heard the brakeman cry out in a loud voice, "for God's sake jump," or "jump for your lives," and immediately and hurriedly start to the brake. This conduct of the brakeman was certainly extraordinary—was not in the usual performance of his duties, and if there was nothing in the situation, or its appearance, to justify such conduct, it was negligence, if it was calculated to disconcert the passengers, and induce them to believe, as ordinarily prudent people, that danger was imminent.

Nor are we willing to say, as a matter of law, that plaintiff should have investigated for himself as to out-

ward appearances of danger under the circumstances in which his testimony places him. It is for the jury to say, under all the surrounding circumstances which may be shown, whether such conduct, in that situation, was sufficient to cause apprehension of immediate danger in the minds of prudent men; and whether the conduct of plaintiff was the reasonable result of the brakeman's conduct.

Defendant insists and the evidence justifies the insistence, that the brakeman was in the cupola, while plaintiff was in the car with his back to him. That plaintiff could not have known the brakeman was addressing him; that the brakeman may have been addressing his fellow employees. We see nothing in this which ought to affect the question. Allowing that the brakeman was not addressing the passengers, or that he was not addressing the language to any one, yet if he used the language without sufficient cause, it may just as readily have produced the result which plaintiff says it did produce, as if it had been addressed to the passengers or the plaintiff direct. If the servant in charge and control of a crowded theater, in the presence and hearing of an audience, negligently, falsely and loudly cries, "fire, run for your lives," would not the proprietor be liable for the damage resulting from the conduct consequent upon the terror which this might excite, whether he addressed his fellow servants or the audience?

It is a part of defendant's contention that, conceding the act of the brakeman to have been negligence, yet it was not the proximate cause of plaintiff's subsequent action and resulting injury. This contention is based upon the fact that McPeak, one of the other passengers in the caboose, jumped from his seat on hearing the brakeman's exclamation, passed plaintiff in going to the door of the car and said, excitedly, "come

on boys, let's get off." And that plaintiff testified, that "after hearing what I heard Mr. McPeak say, I followed." We are not required by the record before us to say that if McPeak's exclamation and excitement (though caused by the negligence of the brakeman) was the sole cause of plaintiff's leaping from the car, plaintiff could not recover. We must view the matter from the standpoint of the evidence presented. Plaintiff heard the exclamation of the brakeman and instantly sprang to his feet and turned towards the brakeman. At that time McPeak was passing him, or had passed him, on his way to the door and made the exclamation above stated. The entire evidence in plaintiff's behalf fails to show that the statement made by McPeak was the sole cause of plaintiff leaving the car. The utmost it can be said to show is that the brakeman's exclamation and acts together with McPeak's excited statement immediately following on the brakeman's exclamation, caused him to make the leap. If therefore the negligent action of the brakeman was such as might ordinarily be expected to produce panic among the passengers and a belief of impending danger, the fact that the resulting action of the passengers, added to plaintiff's terror and operated as additional inducement for his action will not relieve the defendant. 2 Thompson on Negligence, 1088, 1099. If the brakeman's actions were as stated, nothing could be more natural than to expect, under such circumstances, that passengers would give voice to their terror and apprehended peril.

For errors heretofore mentioned, the judgment will be reversed and the cause remanded. All concur.